I would ask counsel when they come forward to the lectern to please enter an appearance and introduce yourself and your firm, if there is a firm affiliation, and who you represent, so that way the record is clear. We'll proceed first with Ms. Oppenheimer. I'm Joan Oppenheimer from the Department of Justice, and I represent the United States in this proceeding. Welcome. Thank you. The basic principle of the foreign tax credit is to prevent double taxation. Would the new regulation resolve the issue in this case for future cases? It would resolve it for future cases. It wouldn't resolve this case. And there is that because the tax years in issue predate the years that would be covered by the regulation. Plus, it's not just this one case at issue that precedes the regulation. There is potentially an enormous amount of revenue at issue that would predate the regulation. The IRS reports that for 2000, which is the last year that they have figures, there was $53 billion in foreign tax credits that were claimed by consolidated foreign corporations. We don't know how many were similarly situated to taxpayers in this case, but certainly it would be open to anyone, if the government loses this case, to file an amended return and attempt to claim foreign tax credits, even though the corresponding income has not been repatriated into the United States. How does the new regulation solve this problem? The new regulation basically solves this by saying you only get the tax credit if you earn the income to which the tax credit is attributed. It's our position that that is really not a change in the law. How is one supposed to determine who earns the income? Is that a matter of foreign law or U.S. law? That would be a matter of foreign law, but I think that is not a difficult question. That is not really the question in this case. I don't think there's any issue about who really earned the income. A consolidated return was filed in this case, and under Luxembourg law, even though a consolidated return was filed, each corporation, each subsidiary, still had to file a tax return on its own income. The evidence would be clear as to who earned the income. The consolidated tax return under Luxembourg law is simply an administrative consolidation that allows corporations that are part of a consolidated group to offset the income and losses of a weighted corporation. Indeed, if under Luxembourg law, the income of one subsidiary was attributed to its parent, the IRS would have allowed the deduction in this case. But under Luxembourg law, the income of the subsidiaries is not attributed to the parent. Each company is treated as earning its own income. There's no merger for corporate law purposes. This is simply an amalgamation. For example, if one company has a loss and another company has a profit, it enables them to offset it. But there's also nothing in this record to suggest that Luxembourg law is treating the parent as a remittance agent either, right? Well, I think that the whole record would support that conclusion. Was there any testimony by any of the foreign law experts that under Luxembourg law, the parent was being treated as a remittance agent? Well, there wasn't really testimony. What there was was various declarations. Okay, but the declarations don't, as I read the record, and I'm happy to be corrected if I'm wrong about this, that there isn't any evidence in these declarations that under Luxembourg law, the parent is treated as a remittance agent. No, but there is statements in the declaration, specifically in Mack's declaration, in which he stated that the income is not attributed to the parent. But isn't that exactly what Article 164bis and the Grand Ducal Decree do, that they attribute the income to the parent? No, that is not what they do. They simply provide for, say, they don't attribute it. In fact, Carlo Mack, who is the second highest ranking person in the Luxembourg Tax Authority, and who also helped draft both Article 164bis and basically the regulations interpreting it, was asked specific questions about this. And the questions and answers are on page 10 of the opening brief. And question 1a, does Luxembourg tax law treat the parent corporation as earning income actually earned by the subsidiaries of the consolidated group? And then the next part of the question is, if Luxembourg tax law treats the parent as earning the income actually earned by the subsidiaries, does Luxembourg tax law disregard the separate corporate entities of the corporation of the subsidiaries? Mack's answer is, the subsidiaries don't lose their juridical personality, but Article 164bis LIR income tax law only provides a consolidation of the results of the members. The next question, alternatively, are both the parent and the individual subsidiaries considered to earn the income actually earned by the subsidiaries? Only the individual subsidiaries are considered to earn the income actually earned by the subsidiaries. This would all matter quite a bit if we were deciding a case under the new regulation, which clearly lays out the determination of what it means for someone to have paid. But the old regulation, in particular F1, also clearly lays out what it means for someone to have paid, and it's the person on whom the foreign law imposes legal liability. Do you dispute in this case that there is no joint and several liability, as was found below? Because it was my understanding that the government conceded that contention on appeal and is not appealing it. Well, we don't appeal that contention, but nevertheless we take the position that the old regulation and the cases construing it directly support our position in this case. The old regulation says… Well, we don't have any interpretation by the IRS to which we would owe deference, Cleveland baseball deference, say, our decision in American Express. We don't have any interpretation of the regulation that suggests that it means what you say it means. And as Judge Moore is pointing out, the regulation on the face doesn't talk about income attribution. It talks about legal liability. So why should we sit here and say, well, this is all very interesting. It says legal liability, but we know they really meant income attribution. How are we supposed to know that? Well, the courts have uniformly construed it that way. In fact, the government has taken exactly the position… I don't see those cases as construing the regulation as requiring income attribution. Some of the cases talk about it as a factual matter, this income attribution, but I don't see them saying that that's the meaning of the regulation. Well, in Gleason Works v. Commissioner 58, Tax Court 464, the tax court said that the test under the regulation does not rest upon a search for the person from whom the tax is collectible, but rather for the person upon whom the tax is imposed. Now, the regulation certainly is a little bit ambiguous, but when you take the wording into account, we feel that it supports the government's position. Counsel, I don't think it's ambiguous at all. The regulation says paid is whom foreign law imposes legal liability, and the government doesn't dispute any longer that legal liability is only imposed on the parent corporation in this case. You've given up your argument with regard to joint and several liabilities. No, we haven't, because it's our position that legal liability means legal liability for the tax itself and not legal liability for payment of the tax. That is exactly the distinction the regulation is making. The regulation says the tax is considered paid by the person on whom foreign law imposes legal liability for the tax, even if another person, such as a withholding agent, remits the tax. Well, it's our position that in this case, the parent who paid the tax is in the position of a withholding agent, and the subsidiaries will— —be treated as a withholding agent or a remittance agent, right? Well, we do know that the legal liability for the tax under— Wait, what's the answer? The answer is no. There's nothing in this record that suggests that under Luxembourg law that they are a mere collection agent or a remittance agent. Well, we submit that the facts of this case are exactly like the facts in Gleason— No, but what's the answer to the question? There is nothing there, right? Well, the record—the declarations went towards establishing whether there was joint and several liability under Luxembourg law. But you're not answering my question. There's nothing there about Luxembourg law treating them as a collection agent or a remittance agent, right? Well, there's nothing specifically that addresses that question, no. But that was also the case in Gleason Works. It was the case in the Brazilian net loan case. And yet in each case, the court held that the person that was entitled to the foreign tax credit was the person on whom the tax was imposed, not the one who paid the tax, even though in each case it was the foreign person who paid the tax. And even though in each case if the foreign person did not pay the tax, the tax could not be collected. In Gleason Works, British law imposed legal liability for the tax on the foreign borrower, on what would be in this case the foreign lender, namely the United States. But it prohibited assessment and collection from the lender. Only the British borrower was responsible to pay the tax. And the court held that nevertheless, the person entitled to the foreign tax credit was the U.S. lender, because that was the person on whose income the tax was imposed, on whose income the tax was imposed. And I see I'm eating into my rebuttal time. It's our position this case is no different from Gleason Works or the Brazilian net loan cases. And I'd like to reserve the rest of my time for rebuttal. Okay, Ms. Oppenheimer, thank you. And we'll now hear from Mr. Weber. And again, please enter your appearance for the record. Good afternoon, Your Honors. Dwayne Weber, Counsel for Guardian Industries. I'm with the law firm of Baker and McKenzie. Also with me is George Carter. The court should affirm the conclusion and judgment of the Court of Federal Claims based on what the U.S. tax law says and what it does not say, and based on what the Luxembourg tax law says and does not say. Turning first to the U.S. income tax law, we see that Section 901B1 provides a foreign tax credit to a taxpayer, a U.S. taxpayer, that pays or accrues a foreign tax during the taxable year. In this case, GIE, the parent company of the Guardian Luxembourg Group, paid that tax, it properly accrued it and paid it, so the statutory prerequisites are satisfied. The regulation... But the regulation seems to distinguish between somebody liable for the tax and somebody who's a remittance agent. And, you know, that's not a very clear distinction, particularly in cases like this. How are we supposed to determine whether we're dealing with a remittance agent or a collection agent situation or not? Well, first of all, let's go back to the original source for the regulation, which was the Biddle case. I mean, Biddle, the concern was, yes, the taxpayer paid the tax, but we want to make sure that the tax is actually imposed on that taxpayer. In other words, it's the taxpayer's tax, because that's the principle that's embodied in the F1 regulation, Section 1.901-2F1, which is the regulation that we're talking about. So when you're examining whether or not it is the tax of the particular taxpayer in question, you have to look to the foreign law and see what foreign law says. In this case, the foreign law makes it very easy, because it says point blank in the Grand Ducal Decree that liability is imposed on the parent for the consolidated income tax under Article 164bis of the Luxembourg Tax Law. There's no question in this case. But a foreign law could say that in a remittance agent situation. It could say the liability for the tax is imposed on the parent, right? I mean, it's sort of mushy. It could, Your Honor, but then the foreign law would also have to separately or otherwise provide for liability in some fashion. But there is some further ambiguity built into this situation based on the fact that the subsidiaries were obligated to file their own returns. And that sort of suggests again that maybe the parent was acting more as a remittance agent and not paying tax on its own behalf or on behalf of the consolidated group. I'm glad you raised that, Your Honor, because I was listening to the dialogue before and I wanted a chance to address that. The Grand Ducal Decree and the circular published by the Luxembourg government both indicate that the reason that that tax return for each subsidiary is supposed to be submitted as if the subsidiary was not part of a consolidated group. In other words, it's for information purposes. What the government actually does with that tax return then is use it in evaluating the consolidated income of the group. But interesting what happens on the back side. After the income tax return is filed, showing the taxable income of the separate subsidiary, then an assessment is issued, because there are a number of different Luxembourg taxes that are incorporated into each assessment. And in that assessment, it shows a deduction, a removal of the taxable income of the individual subsidiary so that the net taxable income on the assessment for each subsidiary is zero. And that's because that income has been moved over to the parent's side. It's assimilated, attributed, deemed to be the income of the parent, however you want to say it. It's no longer the income of the subsidiary for purposes of determining liability to tax under the Luxembourg law. So the fact that they have to submit a return is relatively uninteresting. What's more important is what they do with the information. If we were to conclude that Luxembourg law doesn't attribute the income to the parent, do you lose? No, Your Honor. In fact, our position is that that's wholly irrelevant to the decision because under the F-1 regulation, the touchstone is not whose income is it, but upon whom does foreign law impose liability for the tax. That's what the regulation says. That's what Biddle said. That's what all of the cases, including the withholding tax cases. Suppose we conclude that the regulation is ambiguous. Do you win or does the government win? Well, it's hard to imagine how a regulation that says that you look at the person Suppose we conclude that it is ambiguous. I suppose if the court determines that it's ambiguous, we would say, no, you have to look to how the cases have construed the regulation since it was published and the principle as it has been applied by the courts and, indeed, the IRS itself for many years. And the way the principle has always been applied. But isn't it, I mean, I understand all your arguments that the regulation is not ambiguous and that you win and all that. I'm saying let's just assume hypothetically we conclude that it is ambiguous. Do you win or does the government win? The taxpayer wins because the guidance from the courts and the administrative practice of the Internal Revenue Service and its published revenue rulings all apply the test by looking at foreign law. No, but you're not accepting my hypothetical. My hypothetical is we conclude that we can't determine, that these sources don't allow us to determine the meaning of the regulation, that it's inherently ambiguous, the sort of thing that would be resolved by some other interpretive principle. We can't figure it out from the language. The government wins under those circumstances, right, because you're the one who's claiming the credit and you've got to establish a right to the credit. I'm sorry, Your Honor. I thought you were saying that assuming that the regulation itself is ambiguous. I think what you're now asking is assuming that Luxembourg law is ambiguous. No, I'm assuming that the regulation is ambiguous but that the ambiguity can't be resolved by looking to other cases or the purposes of the regulation or whatever. You know, you run into this sometimes in tax law. Somebody has the burden to establish the right to the deduction or the credit. So if we're in that kind of situation, the government would win, right? No, Your Honor. So what you're telling me is the hypothetical is that the regulation is so ambiguous we don't know what it means, and the case law and the rulings we're going to ignore because we are. I guess we're going to fiat that. And so we have to come up with a new rule. Then I would still say, Your Honor, that the correct way to analyze this is to go back to the code, which says that a taxpayer who pays a foreign tax is entitled to a tax credit. The regulation, after all, is an interpretation or a gloss on the statute. Yeah, yeah, I understand. I mean, it's not clear to me, Your Honor, what principle you would say that the taxpayer loses on in that situation. I also don't understand that to be the government's argument. Their argument is that you should take the words foreign liability or legal liability for the tax in the regulation, take it out of the regulation, and insert instead a test that would look at the person whose income is subject to tax. And there's nothing in the regulation that says anything about income, and there's nothing in all of those authorities that say anything about income. So that certainly shouldn't be the test. If what you're asking, Your Honor, is assume there's no test at all, then I would say— So what I'm saying is assume the statute's ambiguous, assume the regulation's ambiguous, the taxpayer—there are many cases to this effect— the taxpayer has the obligation to prove its entitlement to a credit. And if there's—so the burden is on you. So the burden of ambiguity is on you. This is not an important point, but the fact is it seems to me that under the law, if there's a remaining ambiguity here, the last interpretive principle that we would go to is that the taxpayer has the burden to establish the entitlement to the credit, and you'd lose if we concluded it's ambiguous. Your Honor, I'm having a very hard time responding because we can only rely on the law that's available to taxpayers when they file their tax returns. You don't like my hypothetical, but— If you're asking me to concede that if you all rule that way, that you can rule that way, I mean, that's your prerogative, Your Honor, but I'm— That's not the question, but—go ahead. Well, so we were talking about what the U.S. tax law says and what it doesn't say, and I think we pretty much dispensed with what the tax law does say. What it doesn't say, as I started to get to, the F1 regulation that we're focusing on, it makes no reference at all to income. So there's zero references. There are zero references in that regulation to any attribution or allocation concept or any variant of that term, and there also are zero references to any requirement for matching of the foreign tax credit with the particular income to which the tax relates. But the statute is specific with respect to legal liability. I'm sorry? The statute is specific with respect to legal liability. The regulation? That's correct. I'm sorry, the regulation. It hinges on the party that has legal liability. That's correct. As opposed to a party that is acting merely as a remittance agent. That is correct. So we're left with the dilemma of where and how to draw that line because here clearly a GIE paid the tax, and the question is how do we discern whether they paid the tax as a matter of legal liability under Luxembourg law or that they simply remitted the funds representing the tax obligations of the subsidiaries, each of which filed separate returns and each of which were acknowledged by the government as having zero tax liability themselves. That still leaves us a little bit up in the air as to whether we're dealing with a remittance or whether we're dealing with a liability, does it not? And how do we draw that line? Well, Your Honor, as I said before, as a general matter, there always has to be liability under foreign law. You don't have a tax if there isn't liability. So that liability has to be fixed somewhere. Now sometimes the law will provide for a special rule with respect to collection. You don't have that here in the Luxembourg case. The liability and the collection is with the same party. Under Luxembourg law, the parent company is not only liable for the tax, it's obliged to pay it. And you typically see that in situations where the person who's liable for the tax is present and subject to the jurisdiction of the foreign government. Where you run into a problem and where you see these special collection types of laws typically is where a foreign government, and it sits in the United States as well, has made a determination that it's a heck of a lot easier to collect that tax from somebody else than the party upon whom the liability actually rests. And so in the case of the withholding tax cases, the foreign lender is a bank in a foreign jurisdiction over which the country imposing the tax doesn't have easy jurisdiction to collect the tax. But I think what Judge Lynn is suggesting to you is the great difficulty of drawing a line between liability as a collection agent, liability collected and remitted, and liability for the tax itself. Your Honor, from our perspective, that's a fabrication of the government's current argument in this case. In the vast majority of cases, there's no issue. What part of fabrication? It's a distinction that's made in the regulation? It is, Your Honor, and it is with a parenthetical with a reference to a withholding agent. So it's very clear what the regulations had in mind. The regulations weren't prepared in a vacuum. Treasury Department was familiar with the historical cases dealing with withholding tax situations and wanted to make clear that in that type of situation where you have a paying agent under foreign law, that that doesn't count. That's not the taxpayer that we're after. That's not the person upon whom foreign law imposes liability. Isn't perhaps the answer to my dilemma the fact that in this situation you have both the Grand Ducal Degree and Article 164bis that seem to suggest that it is the legal liability of the parent to remit the taxes on behalf of the group, and you have in this record absolutely nothing to suggest that GIE is in any way acting merely as a remittance agent. There certainly is nothing to suggest that, Your Honor. I would say further that the tax that we're talking about, Sometimes, counsel, you should just say yes. Go ahead. Keep going. The tax is imposed under Article 164bis, and the liability for that tax is imposed on the parent company alone under Luxembourg law. In theory, the Luxembourg government could have decided we're going to spread that liability around through joint and separate liability. They didn't. They imposed it entirely on the parent company. So there's no other mechanism by which liability might be imposed on the individual or subsidiaries that are members of the group. So, Your Honor, based on what the US tax law says... But the cases say that somebody can be a remittance agent even though that's the only person obligated to make payment, right? That's entirely correct, sure. Because they could be the only ones obligated to pay, and it goes back to what I was describing before, as a practical matter, it's very hard to get a foreign bank to pay when it doesn't have any assets in the country. But it's very easy to get the borrower to pay, particularly when, as under Brazilian law, you had to get approval of the banking authorities to make any payment at all, and before you could get that approval, you had to show that the tax had been paid. That guarantees collection of the tax. And so in that sort of situation, absolutely, you're going to have a separate need to have a collection, but you don't have that in the case of a consolidated group under Luxembourg law, the same as under US tax law. So, Your Honor, we urge the Court to affirm the judgment of the Court of Federal Claims. Mr. Weber, thank you very much. Ms. Oppenheimer, have you heard anything to give you pause? No, I haven't, Your Honor. And there's nothing in the Grand Ducal Decree that supports the applicant's position. The Grand Ducal Decree simply says that the parent is liable for corporate income taxes corresponding to the taxable income of the group, but that principle is consistent with the government's position that the parent is simply the remitting agent. How would you help us decide where to draw this line between legal liability as the liable party or simply liability as a remittance agent? Well, one thing that the courts have considered is the purpose of the statute and whether the taxpayer's position is facilitating the purpose of the statute. For example, in the case Marsman v. Commissioner, this is a Fourth Circuit case, under the statute the taxpayer was in fact entitled to the tax credit that it claimed. The taxpayer had owed Philippine taxes for 1938 to 40, and it actually paid these taxes to the Philippine government in 1941. It didn't become a resident of the United States until September of 1940. So under the statute, which entitles you to a credit for taxes paid or accrued, it was entitled to the credit. Nevertheless, the court disallowed the credit for the taxes that were owing for years that the taxpayer was not a resident in this country because the court said the purpose of the foreign tax credit was to prevent double taxation and to allow the credit in this case where in fact there could be no double taxation because the taxpayer wasn't even a resident of this country, so the United States was not taxing the same income as the Philippines. The court said that to allow a tax credit in those circumstances would do violence to the purpose of the tax, even though the literal wording of the statute would support the credit. So I would submit that in doubtful cases such as this, one of the things this court could consider is the purpose of the statute. In this case, the income for which a credit has sought has never been taxed in this country. If taxpayer gets the credit, it will use the credit to offset U.S. income. That was not the purpose of the tax credit. The purpose was to prevent double taxation, not to allow taxpayer to use the credit to offset income earned in this country. Thank you very much. I thank both counsel. The case is submitted.